UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK MAYE,                                          Case No. 14-10864

           Plaintiff,                              Thomas L. Ludington
v.                                                     United States District Judge

P. KLEE, *et al*,                                      Stephanie Dawkins Davis
                                                       United States Magistrate Judge
           Defendants.
_____/

## REPORT AND RECOMMENDATION: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 112)

## I.    PROCEDURAL HISTORY

This prisoner civil rights matter was referred to the undersigned for all

pretrial proceedings on January 29, 2016.  (Dkt. 98).  Plaintiff has filed a motion

for partial summary judgment against defendant Serafin.  (Dkt. 112).  Defendant

Serafin did not initially respond to the merits of this motion.  Rather, he merely

argued that all individual capacity claims are barred for failure to properly plead

them in the amended complaint.  (Dkt. 113).  The Court held a hearing on three

dispositive motions on November 8, 2016, two of which have already been

disposed of by the Court.  In previously ruling on plaintiff's motion for leave to

amend the complaint, the Court concluded that it was clear from the earlier

amended complaint and the course of proceedings (in particular, the response to

1

the earlier motion for leave to amend the complaint filed by defendants) that defendants had sufficient notice of the individual capacity claims, defended against those claims, and fully comprehended their existence.  Thus, the Court granted plaintiff's motion for leave to amend the complaint.  (Dkt. 128). Defendants' objections to that order were recently overruled by Judge Ludington. (Dkt. 137).  Because defendant Serafin did not address the merits of plaintiff's arguments in his response to the motion for partial summary judgment, the Court ordered supplemental briefing on plaintiff's motion.  (Dkt. 128).  Defendant Serafin filed his supplemental response on January 10, 2017, and plaintiff filed his supplemental reply on January 24, 2017.  (Dkt. 133, 136).  This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for partial summary judgment be **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the undersigned recommends that plaintiff be **GRANTED** summary judgment for his First Amendment and Equal Protection claims, and that his claim under the Substantive Due Process Clause be **DENIED** and dismissed with prejudice.

## II.    FACTUAL BACKGROUND

The facts are not in dispute.  Plaintiff has been a member of the Nation of Islam religion since 1992. (Dkt. 112, Ex. A, Dep. Tr. of D. Maye at 7:18-20).  In

1992, plaintiff formally registered as a Muslim, at which point his name was entered into the Lamb's Book of Life and he received his holy name, Raqim Muhammad. *Id*. at 10:18-25. Plaintiff also asserts that, for the last two decades, he has been a devout and consistent participant in his faith during the time of his incarceration. For example, while incarcerated at the Gus Harrison Correctional Facility in 2013, plaintiff attended services twice a week and participated in Ramadan. *Id*. at 13:15-23. Even when he belonged to a unit that was prohibited from attending live religious services, plaintiff consistently requested religious literature and videos so that he could continue to practice his faith. *Id*. at 21:14-22:12. Moreover, when plaintiff was later transferred to Cooper Street Correctional Facility, he resumed his attendance at regular weekly services within days of his arrival. *Id*. at 22:13-17. Thereafter, during the two years that he spent at Cooper Street, plaintiff missed only approximately two services. *Id*. at 25:25-26:7. As plaintiff testified, he was considered a leader in his community. *Id*. at 26:6-14.

Plaintiff also testified regarding the centrality of the Eid, an annual communal celebration in the Muslim faith signifying the end of the holy month of Ramadan:

> Q. What is – can you describe, please, just for the record what exactly is the Eid and what does it mean to you as a practicing Muslim?

> A. The Eid is a religious practice that is central to my
> religious belief. It means breaking the fast. At the end of
> Ramadan, the Muslim community or Islamic community
> comes together and has a feast to break the fast and then
> afterwards makes congregational prayer.

*Id*. at 18:16-25. According to plaintiff, there is no dispute that the Eid is a primary

tenet of the Muslim faith, that its observance is "religiously required," and that it

is an "obligatory festival[.]" (Dkt. 112, Ex. B, Excerpt MDOC Handbook of

Religious Groups).

Important to this case is the history of the complaints about Muslim inmates

being denied the right to observe the Eid by the MDOC. Beginning in 2006,

several MDOC inmates, on behalf of themselves and similarly situated

individuals, brought claims against MDOC officials alleging, among other things,

that the failure to permit Muslim inmates to observe the Eid violated the First and

Fourteenth Amendments of the United States Constitution. *Dowdy-El, et al. v.*

*Caruso, et al*., Case No. 06-11765 ("*Dowdy*") (First Am. Compl. Count II, Count

IV, Dkt. 13). Plaintiff points out that one of the representative plaintiffs in *Dowdy*

belonged to the Nation of Islam faith. Following significant litigation, the *Dowdy*

parties filed competing motions for summary judgment. During the course of the

parties' briefing, the *Dowdy* defendants argued that the question of participation in

the Eid was moot because, on December 10, 2010, the MDOC issued a

memorandum to all of its facilities clarifying that the Eid is a "religiously required

4

observation[]" for Muslim inmates and that each facility must "ensure that this

minimum requirement for Muslim prisoners is met in compliance with policy... ."

(*Dowdy*, Dkt. 70 p. 6; *see also* Dkt. 112, Ex. C, Memorandum Dated December 10,

2010).  However, in the Magistrate Judge's Report and Recommendation granting,

in part, the *Dowdy* plaintiffs' motion for summary judgment, the Court for the

Eastern District of Michigan disagreed.  Instead, the Court found that MDOC

Policy Directive 05.03.150 "lists specific religious meals/observances that are

permitted, including, for example, 'an annual Passover Seder' and 'religious fast

that are necessary to the practice of their religion . . . ." (*Dowdy*, Dkt. 70 p. 39).

The Court further noted that, to be permitted, a religious observance need have

been specifically referred to in Policy Directive 05.03.150 or incorporated by

reference.  *Id*.  Accordingly, because the Eid was not included in Policy Directive

05.03.150 and because the *Dowdy* defendants did not otherwise contest the

plaintiffs' right to observe the Eid, the magistrate judge recommended that the

plaintiffs' motion for summary judgment be granted on all claims relating to the

Eid.  *Id*.

On May 24, 2013, District Judge Avern Cohn adopted, in part, the

Magistrate Judge's Report and Recommendation and entered judgment in the

plaintiffs' favor on all of their claims relating to participation in the Eid.  (*Dowdy*,

Dkt. 80 p. 6).  On July 26, 2013, in response to the *Dowdy* litigation, the MDOC

5

amended Policy Directive 05.03.150 to specifically include observance of the Eid:

> The Special Activities Coordinator shall maintain the
> Handbook of Religious Groups, which sets forth general
> information on the beliefs, practices, and customs of
> each recognized religious group. The Handbook also
> shall identify religious holy days, including any fasts or
> feasts that prisoners shall be permitted to observe
> consistent with Department policy. This includes but is
> not limited to Ramadan fasts, Seders, and Eid-ul-Fitr and
> Eid-ul-Adha feasts.

(Dkt. 112, Ex. D, Policy Directive 05.03.150).  The amended Policy Directive

05.03.150 became effective on July 26, 2013 and was disseminated to MDOC

personnel on July 30, 2013.  (*See id*.; *see also* Dkt. 112, Ex. E, E-mail Dated July

30, 2013, *Maye v. Klee* 0803).  Serafin was included in the distribution list on this

email.  (Dkt. 112-6, Pg ID 1295).

On June 24, 2013, plaintiff sent a request to defendant Joseph Serafin to

participate in the Muslim observance of the holy month of Ramadan.  (Dkt. 99

Compl. at ¶ 17; Dkt. 112, Ex. A, Maye Tr. at 11:13-15).  Defendant Serafin

granted plaintiff's request to participate in Ramadan.  *Id*. at 11:13-15.  According

to his own testimony, defendant Serafin was the individual to whom all such

requests were to be made:

> Q. Okay. So what would [the Chaplain position] include
> or entail?
>
> A. There are, at this point, 22 approved religions that can
> have group services. Inmates will send me a kite; I will
> double-check and see if they're that religion, and then I

6

> put them on call-out for primary and secondary services,
> if they request that.
>
> Q. Okay.
>
> A. I do – if guys ask for spiritual counseling, I do that.
> Also, yeah, special holy days and things like that, but
> that's the primary. I maintain the master schedule and
> stuff like that.
>
> Q. . . . So if there's a problem, or somebody has a
> request, do they come to you first?
>
> A. Yes.
>
> ***
>
> Q. Okay. So there's no intermediary.
>
> A. Not really.

(Dkt. 112, Ex. F, Serafin Dep. Tr. at 6:1-18).  Because defendant Serafin was

responsible for administering religious requests, on July 30, 2013, plaintiff sent a

"kite," or a request, to Serafin requesting to participate in the Eid, which was set

for August 8, 2013:

> As a participating Muslim, and one who is actively
> participating in the observance of the holy month of
> Ramadan, I am requesting to be placed on the call-out to
> attend "Eid-ul-Fitr," the Muslim event that marks the end
> of Ramadan.

(Dkt. 112, Ex. G, Prisoner Kite Request Dated July 30, 2013).  On July 31, 2013,

Serafin denied plaintiff's request and informed him that he must change his

religion if he wished to participate in the Eid: "You are currently declared Nation

of Islam in OMNI. You must change your religion to Al-Islam to attend the Eid."

7

(Dkt. 112, Ex. H, Response Dated July 31, 2013).

After Serafin's response, on August 7, 2013, plaintiff spoke with Serafin in an attempt to resolve the matter.  (Dkt. 112, Ex. I, Step I Grievance).  After this conversation proved unsuccessful, on August 8, 2013, plaintiff filed a Step I Grievance regarding his participation in the Eid and his inability to freely practice his religion.  *Id.*  The Step I Grievance was denied on August 12, 2013, and included a handwritten note reiterating that plaintiff was not permitted to observe the Eid because he belonged to the Nation of Islam faith.  (Dkt. 112, Ex. J, Step I Grievance Denial).  Thus, on August 20, 2013, plaintiff filed a Step II Grievance, which was also denied.  (Dkt. 112, Ex. K, Step II Grievance and Denial).  Finally, on September 17, 2013, plaintiff filed a Step III Grievance, which was also denied. (Dkt. 112, Ex. L, Step III Denial).[1]  As a result of the foregoing conduct, plaintiff filed this lawsuit, alleging, among other claims, claims against Serafin for violation of his Constitutional rights, including the (1) Free Exercise Clause under the First Amendment, (2) Equal Protection under the Fourteenth Amendment, (3) Establishment Clause under the First Amendment, and (4) Due Process Clause under the Fourteenth Amendment.

Serafin testified at his deposition that in 2012 (from the *Dowdy* case) that he

---

[1]  Serafin concedes that plaintiff properly exhausted his administrative remedies. (Dkt. 133, Pg ID 1927).

8

sought guidance from Michael Martin (also a defendant in this case), the Special

Activities Coordinator for the MDOC, as to who should attend the Eids.  (Dkt.

112-7, Pg ID 1303, Dep. Tr. pp.19-21).  Martin advised Serafin in an email that he

had not included members of the Nation of Islam (of which Maye is a member) or

the Moorish Science Temple of America in the Eids.  (Dkt. 133, Ex. A).  Serafin

further testified that he relied on Martin's 2012 email in refusing plaintiff's

request in 2013.

### III.   DISCUSSION

####     A.    <u>Standard of Review</u>

Summary judgment is appropriately rendered "if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see Redding*

*v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining

whether summary judgment is appropriate is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co.*

*v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all

reasonable inferences must be construed in the light most favorable to the non-

moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

B.    Qualified Immunity

1.    Legal standard

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his or her position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*.  If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id*.  If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

The Supreme Court subsequently revisited its decision in *Saucier* and

11

concluded that the mandatory sequencing of the two-part test for determining if

qualified immunity applied was no longer sound based on several factors,

including judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

While not modifying the factors that should be considered in such a decision, the

Court held that sometimes it makes sense to decide the second part of the test first,

and that such a decision may resolve the controversy without having to address the

first part of the test. *Id.* In *Pearson*, the § 1983 claim of the plaintiff was based on

an allegedly unlawful search conducted by the defendant police officers. Without

having to engage in the perhaps more complicated inquiry of whether plaintiff's

constitutional rights had been violated, the Court found that the constitutional

right claimed by plaintiff was not clearly established. Specifically, the Court

concluded that lower court case law was consistent with the conduct of the officers

and "principles of qualified immunity [should] shield an officer from personal

liability when an officer reasonably believes that his or her conduct complies with

the law." *Id.* at 244-45. "This generally means that 'we are free to consider those

questions in whatever order is appropriate in light of the issues before us.'" *Jones

v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting *Moldowan v. City of

Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

Under the "clearly established" prong of the qualified immunity test, the

contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "A clearly established constitutional violation requires on-point, controlling authority or a robust consensus of cases of persuasive authority." *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013). Without on-point authority, only in the most obvious of cases can an official's conduct be held to have been clearly unlawful. *Sample v. Bailey*, 409 F.3d 689, 698-99 (6th Cir. 2005).

Moreover, defendants are not required to affirmatively disprove the existence of clearly established law, because "[t]he burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). Plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).

### 2.    Parties' arguments

In his opening brief, plaintiff contends that he is entitled to summary judgment on his claims for violations of the Equal Protection Clause, the Free Exercise Clause, the Due Process Clause, and the Establishment Clause against Serafin. A prison's practice is valid under the Free Exercise Clause if it is "reasonably related to legitimate penological interests." *O'Lone v. Estate of*

*Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89

(1987)).  Courts use four factors to evaluate whether a practice is valid under the

Free Exercise Clause: (1) is there a "'valid rational connection' between the

challenged regulation and the asserted governmental interest"? (2) "are there

'alternative means of exercising the right that remain open to . . . inmates' if the

regulation is upheld?" (3) "will accommodation of the asserted right have an

undue impact on guards, other inmates, and prison resources generally?" and (4)

"is there an alternative to the challenged regulation that fully accommodates the

prisoner's rights at de minimis cost to valid penological interests?" *Whitney v.

Brown*, 882 F.2d 1068, 1072 (6th Cir. 1989) (quoting *Turner*, 482 U.S. at 89-90).

    As to Equal Protection, plaintiff argues that the undisputed facts show that

Serafin did not permit Nation of Islam inmates to observe the Eid because it

presented problems associated with "mixed religious call-outs."  (Dkt. 112, Ex. F,

Serafin Tr. at 20:2-7).  According to plaintiff, Serafin can offer no legitimate

explanation for why a mixed religious call-out would prevent Nation of Islam

inmates from observing the Eid, and yet not similarly prevent members of Al-

Islam from observing the same.  Instead, when faced with similar mixed religious

call-outs, plaintiff says that Serafin made the conscious decision to favor Al-Islam

over the Nation of Islam, the effect of which was that members of Al-Islam were

rightfully permitted to celebrate their most holy day and members of Nation of

Islam, including plaintiff, were not.  Thus, a comparison of the treatment of the

two sects demonstrates intent to treat the sects differently based on a preference

for Al-Islam, often considered an orthodox Muslim sect.  Moreover, when "mixed

religious call-outs" were implicated for other groups or sects, Serafin testified that

one group is not banned from participating for the benefit of another.  Instead,

defendant Serafin would merely permit the groups to observe their faith at

different times or locations.  (Dkt. 112, Ex. F., Serafin Tr. at 24:2-25:7). Similarly,

when members of Al-Islam possessed different security designations (e.g., Level 1

or 2), Al-Islam inmates of differing security designations were simply permitted to

observe the Eid at different times or in different rooms.  *Id*. at 12:20-13:1.  Serafin

admitted that Al-Islam and Nation of Islam could have "observed the Eid prayer at

different times," that there were rooms of varying size at Gus Harrison that could

have accommodated such services, but that no other arrangements were even

considered for minority Islamic sects, such as the Nation of Islam.  *Id*. at 21:11:22;

22:9-22.

Plaintiff contends that there is no dispute that he is similarly situated in all

material respects with Al-Islam inmates who were permitted to attend the Eid.

Like members of Al-Islam, plaintiff attends weekly prayer services, participates in

Ramadan, and celebrates the Eid as one of two central holy days in the Muslim

faith.  Moreover, members of Al-Islam who were a part of the same security level

as plaintiff—Level I—were permitted to observe the Eid on August 8, 2013, from 8:00 A.M. to 8:50 A.M.  (Dkt. 112, Ex. M, Memorandum Dated July 31, 2013; Ex. N; Memorandum Dated June 25, 2013).  Plaintiff also points out that where other religious groups sought to practice a primary tenet of their religious faith, such as Christmas, those groups were permitted to observe their holidays at different times.  (Dkt. 112, Ex. F, Serafin Tr. at 24:2-25:7).  In contrast, plaintiff, who similarly sought to practice a primary tenet of his religious faith, was precluded from doing so.  Accordingly, plaintiff asserts that Serafin's prohibition of his observance of the Eid cannot pass strict scrutiny review.

Plaintiff also claims that he is entitled to summary judgment on his First Amendment Free Exercise claim.  In *Dowdy*, MDOC officials argued that a court order was unnecessary to ensure the observance of the Eid by all Muslims because, according to MDOC officials, the MDOC already permitted such observation.  Specifically, the MDOC stated that the Eid is a "religiously required observation[]" for Muslim inmates and that each facility must "ensure that this minimum requirement for Muslim prisoners is met in compliance with policy . . . ."  (*Dowdy*, Dkt. 70 p. 6; *see also* Dkt. 112, Ex. C).  Notwithstanding the MDOC officials' insistence that they already permitted the observation of the Eid, the *Dowdy* Court entered judgment in plaintiffs' favor—including in favor of a member of the Nation of Islam—and found that preventing Muslim inmates from

observing the Eid constitutes a violation of the First and Fourteenth Amendments. (*Dowdy*, Dkt. 80 p. 6). Thereafter, in response to the *Dowdy* Order, the MDOC amended Policy Directive 05.03.150 to specifically include observance of the Eid. (Dkt. 112, Ex. D). All of these events took place before July 31, 2013, when Serafin denied plaintiff the right to participate in the Eid. According to plaintiff, no alternative means existed for him to observe the Eid. Further, the accommodation of his observance of the Eid would not have had an undue impact and alternative means existed at a *de minimis* cost.

Next, plaintiff contends that he is entitled to summary judgment on his substantive due process claim, arguing freedom to practice one's religion is a clearly protected liberty interest, plaintiff was deprived of his constitutionally protected right to practice his religion and Serafin's deprivation of that right cannot survive under the *Turner* factors. As such, plaintiff is entitled to judgment as a matter of law.

Finally, as to his Establishment Clause claim, plaintiff argues that Serafin favored an orthodox Muslim sect—Al-Islam—over a non-traditional Muslim sect —Nation of Islam—in permitting only certain inmates to observe a central component of their religious faith. According to plaintiff, Serafin not only implicitly favored other religious groups over the Nation of Islam—by permitting differing sects to observe their religious holidays at different times—Serafin

17

explicitly expressed a preference for Al-Islam, by mandating that plaintiff change his religion to Al-Islam in order to practice his faith. (Dkt. 112, Ex. H). Plaintiff contends that Serafin's conduct squarely violates the Supreme Court's pronouncement that inmates must be afforded "a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz*, 405 U.S. at 322. Similarly, plaintiff maintains that he has demonstrated that Serafin's wholesale prohibition on his ability to observe the Eid cannot survive scrutiny under the *Turner* test. As such, plaintiff says he is entitled to judgment as a matter of law on his claim for violation of the Establishment Clause.

In response, Serafin does not contest plaintiff's analysis of the *Turner* factors. Rather, he argues that plaintiff's claims under the First and Fourteenth Amendments are barred by qualified immunity. Serafin first points to the Sixth Circuit holding that an isolated incident that impacts a prisoner's right to exercise his religion does not violate the First Amendment. *Colvin v. Caruso*, 605 F.3d 282, 293-294 (6th Cir. 2010). In *Colvin*, the Sixth Circuit concluded that isolated incidents of prison officials providing non-kosher food to a Jewish prisoner did not violate the First Amendment. Here, plaintiff missed a single, albeit very important, religious celebration for Muslims. Serafin contends that the same analysis from *Colvin* applies here. Serafin relied on the 2012 email from Martin in

18

making his decision.  According to Serafin, there was some confusion whether

Nation of Islam members, as opposed to members of Al-Islam, needed to attend

the Eid-ul-Fitr.  Serafin also points out that Judge Cohn did not enter a judgment

in the *Dowdy* case until August 13, 2013, which was after the 2013 Eid-ul-Fitr so

it was not clear that Nation of Islam members should attend the Eid-ul-Fitr.

According to Serafin, the Nation of Islam and what the MDOC designates as

Al-Islam are, at a minimum, distinct sects of the same faith and do not share all the

same holidays and traditions.  Serafin maintains that while the *Colvin* decision

dealt with a First Amendment claim, the same reasoning should apply to plaintiff's

Fourteenth Amendment claims.  Missing a single religious service should not

constitute a violation of the Fourteenth Amendment.

If this Court determines that plaintiff did have the right to attend the

Eid-ul-Fitr, Serafin says he is still entitled to qualified immunity because it was

not clearly established in 2013 that rejecting a prisoner's request to attend a single

religious service was a constitutional violation.  According to Serafin, neither the

Supreme Court nor the Sixth Circuit have ever held that prisoners had a right to

attend every religious service they requested.  Under the circumstances in this

case, Serafin maintains that he is entitled to qualified immunity.  At minimum,

Serafin maintains that there is a question of fact as to Serafin's motivation and

whether a single isolated incident of refusing a prisoner's request to participate in

a religious service is a constitutional violation.

        3.      Analysis

The undersigned agrees with plaintiff's primary point in the reply brief, that even though Judge Cohn did not enter a final judgment in *Dowdy* until after observance of the 2013 Eid, Judge Cohn ordered that Muslim inmates, including Nation of Islam inmates, be permitted to observe the Eid <u>more than two months before</u> plaintiff's request to observe the Eid was denied.  (*See Dowdy*, Dkt. 80, p. 6).  Significantly, in response to that order, the MDOC amended Policy Directive 05.03.150 to specifically include observance of the Eid.  Importantly, the amended Policy Directive became effective on <u>July 26, 2013</u>, and was disseminated to MDOC personnel on <u>July 30, 2013</u>, the very day that Serafin denied plaintiff's request to observe the Eid.  Furthermore, Serafin was included on the distribution list for dissemination of the policy, a point from which it reasonably can be inferred that he in fact received it.  Notably, after Serafin's response, on August 7, 2013, plaintiff spoke with Serafin to attempt to resolve the matter.  (Dkt. 112, Ex. I, Step I Grievance).  After this conversation proved unsuccessful, on August 8, 2013, plaintiff filed a Step I Grievance regarding his participation in the Eid and his inability to freely practice his religion.  *Id*.  Thus, there were two opportunities after the initial denial on July 30, 2013, for Serafin to correct his application of the new policy *before* the Eid feast on August 9, 2013.  Yet, he did not do so.

Plaintiff also points out that this Court has already denied Serafin's motion for summary judgment on the question of qualified immunity, stating that "it was clearly established law at the time [he] denied plaintiff's request to attend the Eid feast that such a denial was unconstitutional" and that Serafin "is not entitled to qualified immunity." (Dkts. 46 and 51). Plaintiff argues that these ruling should not be disturbed pursuant to the law of the case doctrine. *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) ("Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of [the] case."). Plaintiff is correct. The undersigned also points out that in the Sixth Circuit, a district court may look to its own decisions in determining whether a right is clearly established:

> Our review of the Supreme Court's decisions and of our own precedent leads us to conclude that, in the ordinary instance, to find a clearly established constitutional right, ***a district court must find binding precedent by the Supreme Court, its court of appeals <u>or itself</u>***. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. Here a mere handful of decisions of other circuit and district courts, which are admittedly novel, cannot form the basis for a clearly established constitutional right in this circuit.

*Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir.

1988) (emphasis added).[2]  Based on the foregoing, the undersigned concludes that

plaintiff had a constitutional right to attend the Eid feast in August 2013 and that

such a right was clearly established at the time of the denial, based on *Dowdy*.

While defendant asserts that missing a single religious service is not a

constitutional violation, plaintiff maintains that this ignores applicable law holding

that precluding an inmate from observing a central tenet of his faith is

unconstitutional.  *See Whitney v. Brown*, 882 F.2d 1068, 1074 (6th Cir. 1989)

(under *Turner*, a policy precluding Jewish inmates from observing Sabbath or

Passover was unconstitutional in view of their religious significance).  Plaintiff

points out that even the MDOC describes the Eid as a "religiously required ...

obligatory festival."  (Dkt. 112, Ex. B; *Dowdy*, Dkt. 80 p. 6).  The undersigned is

not persuaded by Serafin's reliance on *Colvin v. Caruso*, which involved very

different facts regarding the provision of kosher meals and which involved an

apparent mistake, indicating the defendant lacked the requisite intent:

> ... Colvin has not pointed to any evidence showing that
> Chaplain Riley acted unreasonably or that he
> "knowingly" violated Colvin's rights. *See Humphrey v.*
> *Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (holding that
> qualified immunity protects "all but the plainly

---

[2]  The undersigned is bound by this published Sixth Circuit opinion, which does not
appear to have been disturbed by any other published Sixth Circuit precedent.  The undersigned
notes, however, that an unpublished decision of the Sixth Circuit appears to call this holding into
question.  *Hall v. Sweet*, 2016 WL 7321363, *10 (6th Cir. Dec. 16, 2016).

> incompetent or those who knowingly violate the law"
> (citation omitted)). Rather, Riley, consistent with his job
> function, received Colvin's request for kosher meals,
> checked Colvin's eligibility, and was informed that
> Colvin was a Muslim and therefore not qualified for the
> program. Riley, at worst, committed a "reasonable
> mistake" as to Colvin's status, a mistake that does not
> disqualify him from receiving qualified immunity. *See
> Dorsey*, 517 F.3d at 394 ("The concern of the immunity
> inquiry is to acknowledge that reasonable mistakes can
> be made as to the [conduct of a government official]."
> (citation omitted)). Furthermore, once the mistake was
> discovered, LMF officials, including Riley, worked "as
> quickly as possible" to ensure that Colvin received
> kosher meals.

*Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010).  Here, Serafin does not make

the case for innocent mistake.  Thus, he is not entitled to qualified immunity on

this basis either.

      C.    <u>Fourteenth Amendment Claims</u>

      1.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "protects

against invidious discrimination among similarly-situated individuals or

implicating fundamental rights."  *Scarbrough v. Morgan Cnty. Bd. Of Educ.,* 470

F.3d 250, 260 (6th Cir. 2006).  In order to prevail in his claim for violation of the

Equal Protection Clause, plaintiff must show that he was similarly situated in all

material respects to others whose treatment he desires, coupled with a

discriminatory purpose on the part of the accused state actor(s).  *Village of*

*Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265-266 (1977); *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx 826, 836 (6th Cir. 2009). As plaintiff has rightly pointed out, an intent to discriminate under the Equal Protection clause is merely the intent to treat differently. *Colorado Christian Univ. v. Weaver*, 534 F.3d 1245 (10th Cir. 2008). Further, taking into account the totality of the relevant facts, where the law "bears more heavily" on members of one protected class than on another, an "invidious discriminatory purpose" may be inferred. *Washington v. Davis*, 426 U.S. 229, 242 (1976).

Based on the undisputed facts here, defendant Serafin made a conscious decision to treat religious adherents of Al-Islam differently from plaintiff and other adherents of the Nation of Islam. Going further, Serafin even suggested to plaintiff that if he wanted to receive the same treatment that Al-Islam members received, he should change his religious sect to Al-Islam. As such, an invidious discriminatory purpose may be inferred.

Plaintiff also set forth sufficient evidence, discussed *supra,* to demonstrate that plaintiff is similarly situated in all material respects to Al-Islam inmates who were allowed to attend the Eid. Yet, in his response, Serafin has failed to come forward with any evidence countering plaintiff's evidence of discrimination, simply stating without adverting to any particular evidence that "[a]t minimum, there is a question (sic) fact as to Serafin's motivation...". (Dkt. 133, Pg ID 1933).

Serafin's primary response concerning Equal Protection is that the court should

dismiss the claim because, assuming the inapplicability of qualified immunity as

to defendant Serafin, plaintiff's cause sounds solely under the First Amendment.

Having failed to substantively dispute the facts set forth by plaintiff supporting:

(1) the implication of plaintiff's fundamental right to practice religion; (2)

discriminatory treatment and a discriminatory purpose by Serafin[3]; and (3)

plaintiff being similarly situated to Al-Islam observants who were permitted to

attend the Eid, defendant's argument fails.

2.    Substantive Due Process

Plaintiff has persuasively asserted that there exists a protected liberty

interest in practicing one's religion.  *See Ramsey v. Goord*, 661 F.Supp.2d 370

(W.D.N.Y. 2009) ("Among the 'most basic liberty interests' retained by prison

inmates is the First Amendment to freely exercises religion."); *Chambers v.*

*Eppolito*, 2007 WL 1892093, at *12 (D.N.H. 2007) ("Because the First

---

[3] Defendant Serafin attached to his Response a copy of the email chain generated between himself and co-defendant Michael Martin, the MDOC Special Activities Coordinator, on the issue of exclusion of Nation of Islam prisoners in the Eid, wherein Martin advised: "... I never included the few MSTA and NOI members in the call-out.  That had to do with the issue of a mixed religious call-outs.  I don't know if that is the 'right' way to do it, but I received no complaints from the NOI or MSTA prisoners." (Dkt. 133-2, Pg. ID 1941).  However, defendant makes no effort to argue that avoidance of mixed religious call-outs was reasonably related to a valid penological interest, and assuming it is, that exclusion of members of NOI and MSTA was the least restrictive manner in which to serve any articulated interest.  Moreover, the timing of the email, which well pre-dates the *Dowdy* Order in which Judge Cohn determined the practice violated the First and Fourteenth Amendments renders reliance on the Martin memo unreasonable.

Amendment gives rise to a liberty interest in practicing one's religion, before the
State can burden the practice of his faith, [plaintiff] is entitled to due process.");
*see also Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) ("While this court has not
attempted to define with exactness the liberty interest thus guaranteed, the term
has received much consideration and some of the including things have been
definitely stated.  Without doubt, it denotes not merely freedom from bodily
restraint but also the right . . . to worship God according to the dictates of his own
conscience[.]").

  Notwithstanding the undersigned's acknowledgment of the liberty interest
attached to plaintiff's right to worship, he is not entitled to summary judgment on
his Substantive Due Process claim under the Fourteenth Amendment.  Defendant
Serafin correctly points out that the First Amendment is the proper source for
relief for plaintiff here.   The Supreme Court has held that when there is an explicit
source for a constitutional protection, then a plaintiff's claim should be analyzed
under that Amendment.  *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v.
Connor,* 490 U.S. 386, 395 (1989).  In *Albright*, the Court quoted its language
from *Graham* where it declared:

> "[W]here a particular Amendment 'provides an explicit
> textual source of constitutional protection' against a
> particular sort of government behavior, 'that
> Amendment, *not the more generalized notion of
> substantive due process*, must be the guide for analyzing
> these claims."

*Id.* (emphasis supplied).

Defendant's citation to *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) is also apt.  In *Walker*, the plaintiff sought relief under the Substantive Due Process Clause of the Fourteenth Amendment for the defendants' actions that allegedly led to the death of a prisoner.  However, applying the reasoning from *Graham*, the Sixth Circuit concluded that the source of plaintiff's claim was the Eighth Amendment, which specifically addresses the "unnecessary and wanton infliction of pain in penal institutions."  *Id.* (quoting *Whitley v. Albers,* 475 U.S. 312, 326 (1986).  As such, plaintiff's claims required analysis solely under that Amendment.  Similarly, in the instant case, plaintiff's right to the free exercise of his religion and freedom from the state's establishment of religion have an explicit source in the First Amendment, discussed *infra*; and his right to be free from discriminatory treatment based on his religion finds an explicit source in the Equal Protection Clause of the Fourteenth Amendment.  Thus, his remedy(ies) for any alleged violation of those rights reside(s) in those Amendments.  Therefore, plaintiff is not entitled to summary judgment for his claim under the Substantive Due Process Clause, and for the reasons discussed above, that claim should be dismissed.

Notably, defendant makes a blanket assertion of the *Graham* limitation for all of  plaintiff's Fourteenth Amendment claims, presumably in an effort to also

foreclose plaintiff's Equal Protection claim.  However, the rationale for *Graham*

applies specifically in the context of a plaintiff's invocation of the Substantive

Due Process Clause.  Indeed, the Court there noted that the limitation stems from

instances where a defendant's liberty interest finds no explicit source of protection

in any of the Constitutional Amendments.  The Equal Protection Clause of the

Fourteenth Amendment however, as discussed above, provides an explicit—and

distinct—source of protection for those individuals subjected to discriminatory

action by the State in relation to the exercise of a fundamental right or against a

protected class.  Consequently, plaintiff's cause under the Equal Protection Clause

is not dependent on invocation of the Substantive Due Process Clause and, thus,

does not appear to be subject to the *Graham* limitation.

      D.    <u>First Amendment Claims</u>

          1.    Free Exercise Clause

The Free Exercise Clause of the First Amendment to the United States

Constitution provides that "Congress shall make no law . . . prohibiting the free

exercise [of religion]." U.S. Const. Amend. I.  The First Amendment is applicable

to the States through the Fourteenth Amendment.  *Cantwell v. Connecticut*, 310

U.S. 296, 303 (1940).  Defendant Serafin has failed to come forward with any

evidence suggesting that the practice of disallowing Nation of Islam inmates from

attending the Eid is reasonably related to a legitimate penological interest, as

required under *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (quoting

*Turner v. Safley*, 482 U.S. 78,89 (1987)).  Under *Turner*, the following four factors

are relevant in determining the reasonableness of the regulation at issue:

> (1) whether there is a "'valid, rational connection'
> between the prison regulation and the legitimate
> governmental interest put forward to justify it;"
>
> (2) whether there are "alternative means of exercising the
> right that remain open to prison inmates;"
>
> (3) the "impact accommodation of the asserted
> constitutional right will have on guards and other
> inmates, and on the allocation of prison resources
> generally;" and
>
> (4) the availability of a "ready alternative…that fully
> accommodates the prisoner's rights at *de minimis* cost to
> valid penological interests."

*Id.* at 89-91.  However, a "trial court is not required to weigh evenly, or even

consider explicitly, each of the four *Turner* factors."  *Spies v. Voinovich,* 173 F.3d

398, 403 (6th Cir. 1999).

Here, to the extent that there is any substantive discussion concerning a

rationale for the practice, it is the concern of "mixed religious call-outs" which

defendant Serafin mentioned during his deposition.  Yet, plaintiff ably

demonstrates both the minimal nature of the concern as well as the availability of,

and indeed routine use of measures to address the concern within the facility.

Specifically, plaintiff points out, from defendant Serafin's own testimony, that

mixed religious call-outs relating to various sects of Christians are routinely accommodated at the facility.  For instance, the various Christian sects that all celebrate Christmas on December 25th each year, including Mormons, Orthodox Christians, Protestants, Roman Catholics and Seventh Day Adventists, were simply slotted different times for their respective celebrations.  The same procedure was utilized for participation in the Eid feast for various members of Al-Islam who were assigned different security designations: those of the same level were permitted to celebrate together during the time slot assigned to their respective levels.  Thus, to the extent that there may have been any legitimate penological interest in avoiding mixed religious call-outs, defendant Serafin's testimony makes clear that alternative procedures could be employed at *de minimis* expense to the prison to satisfy that interest.

Plaintiff also adequately establishes that he is similarly situated in all material respects to members of Al-Islam who were permitted to participate in the Eid feast, noting their mutual observance of the central tenants of Islam as well as his Level I inmate status.  Defendant Serafin on the other hand, makes no effort to address any of the factors set forth in *Turner*, to determine whether there has been a Free Exercise violation.  As such, plaintiff is entitled to summary judgment on this claim.

2.   Establishment Clause

The First Amendment of the United States Constitution proscribes the enactment of any law "respecting an establishment of religion."  U.S. CONST. amend. I.  The Supreme Court has established that, "[T]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."  *Larson v. Valente*, 456 U.S. 228, 244 (1982).  Moreover, the protection of the First Amendment extends to lesser known and/or less well established sects within a given religion.  *See Wilson v. Natn'l Labor Relations Bd.*, 920 F.2d 1282, 1285-87 (6th Cir. 1990) (state statute found to have violated the Establishment Clause because it accommodated the "established and traditional tenets" of "bona fide" religions but not the beliefs of individuals associated with unestablished sects).

 In the context of prison inmates, a prisoner who follows a minority religion must be afforded "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  Indeed, failure of the state to afford such an opportunity evidences "palpable discrimination."  *Id.*  Once a prisoner establishes the existence of purposeful discrimination based on religion, the same analytical framework applied above to plaintiff's Free Exercise claim, namely – *Turner v. Safley's* inquiry of whether the prison's regulation is

reasonably related to a legitimate penological interest, applies to plaintiff's Establishment Clause claim.  *California First Amendment Coalition v. Woodford*, 299 F.3d 868, 878 (9th Cir. 2002) ("[I]n reviewing a challenge to a prison regulation that 'burdens fundamental rights,' we are directed to ask whether the regulation is 'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns.") (quoting *Turner v. Safley*); *see also Harris v. McRae*, 448 U.S. 297, 323 n. 26 (1980) (where claimed constitutional violation relied on disparate treatment between groups, plaintiffs were required to show that the facially neutral statute purposely discriminated against members of protected class); *Cf. Scott v. Pierce*, 2012 WL 12535442, *3 (S.D. Tex. 2012) (District Court applied strict scrutiny to prisoner's Establishment Clause claim, rather than more lenient *Turner v. Safley* standard), and *Glenn v. New Hampshire State Prison Family Connection Center*, 2012 WL 2413934, *4 (D. N.H. 2012) (same).[4]

Here, the policy at issue here is Serafin's denial of the right to participate in the Eid feast to members of the Nation of Islam.  *See Am. Humanist Ass'n v. United States*, 63 F.Supp.3d 1274, 1282 (D. Or. 2014) ("For the purpose of an Establishment Clause violation, 'a government policy need not be formal, written,

---

[4] Here, the undersigned has concluded that the policy applied to members of the Nation of Islam fails to meet the *Turner v. Safley* test and thus, it would also fail to satisfy the higher standard of strict scrutiny.

or approved by an official body to qualify as state sponsorship of religion.'")

(quoting *Canell v. Lightner*, 143 F.3d 1210, 1214 (9th Cir. 1998)).  As discussed,

defendant has not come forward with any evidence to suggest that there is a

genuine issue of fact relating to the existence of a legitimate penological interest.

Moreover, it remains undisputed that defendant Serafin expressly denied plaintiff

the opportunity to participate in the Eid because of his status as a member of the

Nation of Islam, while at the same time members of the majority sect, Al-Islam,

were permitted to participate.  Defendant Serafin's further actions in (1)

suggesting that plaintiff change his affiliation to Al-Islam in order to receive

permission to participate, and (2) failing to adhere to the prison's own revised

policy requiring that Nation of Islam members be permitted to participate in the

Eid, underscore the disparity in treatment, amplify the wholesale nature of the

deprivation, and readily support a finding of purposeful discrimination.

      E.      <u>Defense Pursuant to 42 U.S.C. § 1997e(e)</u>

      According to defendant Serafin, it is unclear whether plaintiff is seeking

damages for a mental or emotional harm.  If he is, Serafin asks the Court to

dismiss any damage claims for mental or emotional harm because plaintiff did not

suffer a physical injury at the hands of Serafin.  Serafin maintains that he is

entitled to partial summary judgment because, pursuant to 42 U.S.C. § 1997e(e),

plaintiff has not demonstrated that he suffered a physical injury.  Serafin concedes

that plaintiff can seek presumed and punitive damages.  As plaintiff points out, the Sixth Circuit has rejected the notion that a plaintiff alleging the violation of a constitutional right is not entitled to compensatory damages.  *King v. Zamiara*, 788 F.3d 207 (6th Cir. 2015).  "Deprivations of First Amendment rights are themselves injuries, apart from any mental, emotional, or physical injury that might also arise from the deprivation, and [the PRLA] does not bar all relief for injuries to First Amendment rights."  *Id*. at 212.

Serafin did not seek permission to file another motion for summary judgment and the undersigned declines to consider this argument.  *See* E.D. Mich. Local Rule 7.1(b)(2) ("A party must obtain leave of court to file more than one motion for summary judgment.").  Moreover, it is entirely improper under this Court's Electronic Filing Policies and Procedures to combine a response to a motion with a motion for affirmative relief.  *See* Electronic Filing Policies and Procedures, Rule 5(f) ("...a response or reply to a motion must not be combined with a counter-motion.").  Serafin is not entitled to seek affirmative relief via a response to a motion for summary judgment.  Thus, the undersigned declines to address this issue.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for partial summary judgment be **GRANTED IN PART** and

**DENIED IN PART**.  Specifically, the undersigned recommends that plaintiff be

**GRANTED** summary judgment for his First Amendment and Equal Protection

claims, and that his claim under the Substantive Due Process Clause be **DENIED**

and dismissed with prejudice.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local

Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further

right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health

and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local

Rule 72.1(d).  The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc.  If the Court determines that any objections

are without merit, it may rule without awaiting the response.

Date: March 3, 2017                    s/Stephanie Dawkins Davis
                                       Stephanie Dawkins Davis
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 3, 2017, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the attorneys of record.

                                       s/Durene Worth
                                       Acting in the absence of
                                       Tammy Hallwood, Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov

36