UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK MAYE,                                    Case No. 14-10864

            Plaintiff,                           Thomas L. Ludington
v.                                               United States District Judge

P. KLEE, *et al*,                                Stephanie Dawkins Davis
                                                 United States Magistrate Judge
            Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTION FOR SUMMARY JUDGMENT (Dkt. 146)

### I.   PROCEDURAL HISTORY

This prisoner civil rights matter is referred to the undersigned for all pretrial proceedings by District Judge Thomas L. Ludington.   (Dkt. 98, 145).   Defendants filed this motion for summary judgment on June 6, 2017 (Dkt. 146), pursuant to Judge Ludington's May 18, 2017 allowing them to file a third motion for summary judgment, given that the newer defendants had not had an opportunity to submit certain legal issues to the Court previously.   (Dkt. 145).   Plaintiff responded on July 5, 2017 and defendants filed their reply on July 18, 2017.   (Dkt. 148, 149). The parties filed their joint statement of resolved and unresolved issues on October 6, 2017.   (Dkt. 153).   Pursuant to notice, the Court held a hearing on October 19, 2017.   (Dkt. 152).

Notably, plaintiff previously filed a motion for partial summary judgment

against defendant Serafin.   (Dkt. 112).   The undersigned recommended that plaintiff's motion against defendant Serafin be granted.   (Dkt. 138) ("March 3 RR").   In his May 15, 2017 Order, Judge Ludington indicated that the March 3 RR would be considered in conjunction with the report and recommendation issued on the instant motion.   (Dkt. 145).

The moving defendants are Joseph Barrett, Michael Martin, William Riley, Joseph Serafin, and Will Taylor.   Barrett is the warden of the Cooper Street Facility (JCS) in Jackson.   Martin was the Special Activities Coordinator for the MDOC.   Martin retired on February 14, 2014.   (Dkt. 146, Ex. A, p. 5).   Riley was the Deputy Warden at JCS.   Riley retired in November 2015.   (Dkt. 146, Ex. B, p. 5).   Serafin is the chaplain at the Gus Harrison Correctional Facility (ARF) in Adrian.   Taylor was the chaplain at JCS until December 2015.   (Dkt. 146, Ex. C, p. 46).

Plaintiff does not contest defendants' motion for summary judgment on the following claims: (1) plaintiff's 2014 First and Fourteenth Amendment claims against defendants Riley and Barrett; (2) plaintiff's 2014 Fourteenth Amendment claim against defendant Taylor; and (3) plaintiff's 2015 First and Fourteenth Amendment claims against defendants Riley, Barrett, and Taylor.   (Dkt. 148, Pg ID 2172, n. 1).   Thus, the remaining disputed claims are the 2013 First and Fourteenth Amendment claims against Martin and Serafin along with the 2014

First Amendment claim against Taylor.

According to the Joint Statement, there are three disputed issues before the Court: (1) did plaintiff exhaust the claim against Martin; (2) are Martin and Serafin entitled to qualified immunity for plaintiff's 2013 First and Fourteenth Amendment claims; and (3) are plaintiff's Fourteenth Amendment claims against Martin and Serafin barred because the First Amendment is the explicit source of plaintiff's claims.   (Dkt. 153).   While the Joint Statement does not address any claim against Taylor, despite the response indicating that the 2014 First Amendment claim against him remains contested, the parties confirmed at the hearing that this claim remains disputed.   *Id*.

For the reasons set forth below, the undersigned **RECOMMENDS**:

1.     that defendant Serafin's motion for summary judgment be **DENIED** in part and **GRANTED** in part (as to plaintiff's substantive due process claim only) and that plaintiff's motion for partial summary judgment be **GRANTED** in part as set forth in the March 3, 2017 Report and Recommendation;

2.     that defendant Taylor's motion for summary judgment be **GRANTED** in all respects except as to the Free Exercise claim, which should be **DENIED**;

3.     that defendant Martin's motion for summary judgment should be **GRANTED** in its entirety; and

4.     that defendants Riley's and Barrett's motion for summary judgment

should be **GRANTED** in its entirety, pursuant to the parties' agreement.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Faith

Plaintiff's testimony reveals that he has been a member of the Nation of Islam religion since 1992.   (Dkt. 112, Ex. A, Dep. Tr. of D. Maye at 7:18-20).   In 1992, plaintiff states that he formally registered as a Muslim, at which point his name was entered into the Lamb's Book of Life and he received his holy name, Raqim Muhammad.   *Id*. at 10:18-25.   Plaintiff also asserts that, for the last two decades, he has been a devout and consistent participant in his faith during the time of his incarceration.   For example, while incarcerated at the Gus Harrison Correctional Facility in 2013, plaintiff attended services twice a week and participated in Ramadan.   *Id*. at 13:15-23.   Even when he belonged to a unit that was prohibited from attending live religious services, plaintiff consistently requested religious literature and videos so that he could continue to practice his faith.   *Id*. at 21:14-22:12.   Moreover, when plaintiff was later transferred to Cooper Street Correctional Facility, he resumed his attendance at regular weekly services within days of his arrival.   *Id*. at 22:13-17.   Thereafter, during the two years that he spent at Cooper Street, plaintiff missed only approximately two services.   *Id*. at 25:25-26:7.   As plaintiff testified, he was considered a leader in his community.   *Id*. at 26:6-14.

Plaintiff also testified regarding the centrality of the Eid, an annual communal celebration in the Muslim faith signifying the end of the holy month of Ramadan:

> Q. What is – can you describe, please, just for the record what exactly is the Eid and what does it mean to you as a practicing Muslim?
>
> A. The Eid is a religious practice that is central to my religious belief.   It means breaking the fast.   At the end of Ramadan, the Muslim community or Islamic community comes together and has a feast to break the fast and then afterwards makes congregational prayer.

*Id*. at 18:16-25.   According to plaintiff, there is no dispute that the Eid is a primary tenet of the Muslim faith, that its observance is "religiously required," and that it is an "obligatory festival[.]"   (Dkt. 112, Ex. B, Excerpt MDOC Handbook of Religious Groups).

B.    The *Dowdy* Litigation

Important to this case is the history of the complaints about Muslim inmates being denied the right to observe the Eid by the MDOC.   Beginning in 2006, several MDOC inmates, on behalf of themselves and similarly situated individuals, brought claims against MDOC officials alleging, among other things, that the failure to permit Muslim inmates to observe the Eid violated the First and Fourteenth Amendments of the United States Constitution.   *Dowdy*, *et al. v. Caruso*, *et al*., Case No. 06-11765 ("*Dowdy*") (First Am. Compl. Count II, Count

IV, Dkt. 13). Plaintiff points out that one of the representative plaintiffs in *Dowdy*

belonged to the Nation of Islam faith. Following significant litigation, the *Dowdy*

parties filed competing motions for summary judgment. During the course of the

parties' briefing, the *Dowdy* defendants argued that the question of participation in

the Eid was moot because, on December 10, 2010, the MDOC issued a

memorandum to all of its facilities clarifying that the Eid is a "religiously required

observation[]" for Muslim inmates and that each facility must "ensure that this

minimum requirement for Muslim prisoners is met in compliance with policy... ."

(*Dowdy*, Dkt. 70 p. 6; *see also* Dkt. 112, Ex. C, Memorandum Dated December 10,

2010). However, in the Magistrate Judge's Report and Recommendation

granting, in part, the *Dowdy* plaintiffs' motion for summary judgment, the Court

for the Eastern District of Michigan disagreed. Instead, the Court found that

MDOC Policy Directive 05.03.150 "lists specific religious meals/observances that

are permitted, including, for example, 'an annual Passover Seder' and 'religious

fast(s) that are necessary to the practice of their religion . . . ." (*Dowdy*, Dkt. 70 p.

39). The Court further noted that, to be permitted, a religious observance must

have been specifically referred to in Policy Directive 05.03.150 or incorporated by

reference. *Id*. Accordingly, because the Eid was not included in Policy Directive

05.03.150 and because the *Dowdy* defendants did not otherwise contest the

plaintiffs' right to observe the Eid, the magistrate judge recommended that the

plaintiffs' motion for summary judgment be granted on all claims relating to the Eid.  *Id.*

On May 24, 2013, District Judge Avern Cohn adopted, in part, the Magistrate Judge's Report and Recommendation and entered judgment in the plaintiffs' favor on all of their claims relating to participation in the Eid.  (*Dowdy*, Dkt. 80 p. 6).  On July 26, 2013, in response to the *Dowdy* litigation, the MDOC amended Policy Directive 05.03.150 to specifically include observance of the Eid:

> The Special Activities Coordinator shall maintain the Handbook of Religious Groups, which sets forth general information on the beliefs, practices, and customs of each recognized religious group.   The Handbook also shall identify religious holy days, including any fasts or feasts that prisoners shall be permitted to observe consistent with Department policy.   This includes but is not limited to Ramadan fasts, Seders, and Eid-ul-Fitr and Eid-ul-Adha feasts.

(Dkt. 112, Ex. D, Policy Directive 05.03.150).   The amended Policy Directive 05.03.150 became effective on July 26, 2013 and was disseminated to MDOC personnel on July 30, 2013.   (*See id.*; *see also* Dkt. 112, Ex. E, email dated July 30, 2013, *Maye v. Klee* 0803).   Serafin was included in the distribution list on this email.   (Dkt. 112-6, Pg ID 1295).

C.      Plaintiff's 2013 Request to Participate in Eid

On June 24, 2013, plaintiff sent a request to defendant Joseph Serafin to participate in the Muslim observance of the holy month of Ramadan.   (Dkt. 99

Compl. at ¶ 17; Dkt. 112, Ex. A, Maye Tr. at 11:13-15).   Defendant Serafin

granted plaintiff's request to participate in Ramadan.   *Id*. at 11:13-15.   According

to his own testimony, defendant Serafin was the appropriate individual to whom all

such requests were to be made:

> Q. Okay.   So what would [the Chaplain position] include
> or entail?
>
> A. There are, at this point, 22 approved religions that can
> have group services.   Inmates will send me a kite; I will
> double-check and see if they're that religion, and then I
> put them on call-out for primary and secondary services,
> if they request that.
>
> Q. Okay.
>
> A. I do – if guys ask for spiritual counseling, I do that.
> Also, yeah, special holy days and things like that, but
> that's the primary.   I maintain the master schedule and
> stuff like that.
>
> Q. . . .   So if there's a problem, or somebody has a
> request, do they come to you first?
>
> A. Yes.
>
>         ***
>
> Q. Okay.   So there's no intermediary.
>
> A. Not really.

(Dkt. 112, Ex. F, Serafin Dep. Tr. at 6:1-18).   Because defendant Serafin was

responsible for administering religious requests, on July 30, 2013, plaintiff sent a

"kite," or a request, to Serafin requesting to participate in the Eid, which was set

for August 8, 2013:

> As a participating Muslim, and one who is actively
> participating in the observance of the holy month of
> Ramadan, I am requesting to be placed on the call-out to
> attend "Eid-ul-Fitr," the Muslim event that marks the end
> of Ramadan.

(Dkt. 112, Ex. G, Prisoner Kite Request Dated July 30, 2013).   On July 31, 2013,

Serafin denied plaintiff's request and informed him that he must change his

religion if he wished to participate in the Eid: "You are currently declared Nation

of Islam in OMNI.   You must change your religion to Al-Islam to attend the Eid."

(Dkt. 112, Ex. H, Response Dated July 31, 2013).

After Serafin's response, on August 7, 2013, plaintiff spoke with Serafin in

an attempt to resolve the matter.   (Dkt. 112, Ex. I, Step I Grievance).   After this

conversation proved unsuccessful, on August 8, 2013, plaintiff filed a Step I

Grievance regarding his participation in the Eid and his inability to freely practice

his religion.   *Id.*   The Step I Grievance was denied on August 12, 2013, and

included a handwritten note reiterating that plaintiff was not permitted to observe

the Eid because he belonged to the Nation of Islam faith.   (Dkt. 112, Ex. J, Step I

Grievance Denial).   Thus, on August 20, 2013, plaintiff filed a Step II Grievance,

which was also denied.   (Dkt. 112, Ex. K, Step II Grievance and Denial).   Finally,

on September 17, 2013, plaintiff filed a Step III Grievance, which was also denied.

(Dkt. 112, Ex. L, Step III Denial).   As a result of the foregoing conduct, plaintiff

filed this lawsuit, alleging, among other claims, claims against Serafin for violation

of his Constitutional rights, including the (1) Free Exercise Clause under the First Amendment, (2) Equal Protection under the Fourteenth Amendment, (3) Establishment Clause under the First Amendment, and (4) Due Process Clause under the Fourteenth Amendment.

Serafin testified at his deposition that in 2012 (from the *Dowdy* case) he sought guidance from Michael Martin (also a defendant in this case), the Special Activities Coordinator for the MDOC, as to who should be permitted to attend the Eids. (Dkt. 112-7, Pg ID 1303, Dep. Tr. pp.19-21). Martin advised Serafin in an email that he had not included members of the Nation of Islam (of which Maye is a member) or the Moorish Science Temple of America in the Eids. (Dkt. 133, Ex. A). Serafin further testified that he relied on Martin's 2012 email in refusing plaintiff's request in 2013.

D. Plaintiff's 2014 Request to Participate in Eid

In October 2013, the MDOC transferred plaintiff from the Gus Harrison facility, to the Cooper Street Facility in Jackson, Michigan. On July 16, 2014, on behalf of the Nation of Islam Community at Cooper Street, plaintiff sent Cooper Street Chaplain, Chaplain Taylor, a "Proposed Breaking of the Fast Feast" notice, requesting that the Cooper Street administration approve Nation of Islam's celebration of the Eid Service. (Dkt. 129, Ex. 1, July 16, 2014 Letter to Taylor). According to plaintiff, on July 23, 2014, plaintiff and Chaplain Taylor met to

discuss plaintiff's request to attend 2014 Eid Service.    Taylor, like Serafin, was

the individual at Cooper Street in charge of receiving, processing, and permitting

or denying these requests.    During this meeting, plaintiff says that he requested,

among other things, a call-out from his work detail in order to observe Eid.

> Q. Did you specifically ask Chaplain Taylor to put you
> on the call-out for the religious service?
>
> A. Yes, ma'am.
>
> Q. What did Chaplain Taylor say?
>
> A. He said he would take care of it.
>
> Q. And was that during the 23rd – the meeting on July
> 23rd?
>
> A. That was during our meeting.

(Maye Tr. at 42:12-30).    Plaintiff maintains that Taylor also told him that on July

29, 2014, the Nation of Islam observers would be permitted to use a room at

Cooper Street for one hour in order to pray, however, no traditional Eid Service

would be allowed.    Despite this meeting with Taylor and his request, plaintiff did

not receive a call-out for Eid on July 23, 2014.

According to plaintiff, same-day, informal call-out requests were a

customary practice at Cooper Street and frequently granted.    (Taylor Tr. at 33:4-

10, Dkt. 148, Ex. A).    Thus, on July 23, the day of the 2014 Eid observance,

plaintiff says he made an additional attempt to attend by asking his work

supervisor for a call-out.

> Q. Did you tell your supervisor that you needed to be out
> to attend this service, this Eid service?
>
> A. I mentioned it to my supervisor but supervisor is not
> going to give me a day off as a prisoner because I ask for
> a day off.   There has to be a memo, and that's MDOC
> policy that the chaplain is to send a memo to the heads of
> all departments notifying if they have any prisoners or --
> of a specific religion working in that department that they
> have to list the religious holiday and authorize that
> person to be off.
>
> Q. Did you request that of Chaplain Taylor, that he do
> that for you?
>
> A. I requested it at our meeting[.]

(Maye Tr. at 40:8-23)

According to Taylor, plaintiff did not submit a request to participate in the

2014 Eid.   Rather, on July 16, 2014, plaintiff submitted a request to Taylor

regarding observation of the Eid-ul-Fitr.   (Dkt. 146, Ex. D, pp. 28-29).   Plaintiff

wanted the MDOC to allow prisoners to bring food from the commissary to engage

in a feast.   *Id.* at 43.   The MDOC denied the NOI a feast, but permitted the NOI

to congregate.   *Id.* at 31, 43.   That gathering took place on approximately July 29,

2014.   *Id.* at 39.   While plaintiff claims that he asked Taylor to be put on a call

out for the service during a meeting on July 23, 2014, because his work detail

conflicted with the time of the Eid service, Taylor denies ever receiving this

request.   (Dkt. 146, Ex. D, p. 42; Ex. C, pp. 32-33).   Taylor testified that every

other prisoner who wanted to attend the Eid received his call out.   (Dkt. 146, Ex.

C, p. 34).

On July 30, 2014, plaintiff filed a grievance against Taylor for his refusal to

allow observance of the 2014 Eid Service ("Taylor Grievance") (Taylor Grievance,

Dkt. 129, Ex. 5).   The Taylor Grievance was denied.   Plaintiff also filed

grievances against Riley and Barrett, which the MDOC consolidated with his

grievance against Taylor.   Then, on or around August, 2014, Maye filed a Step II

Grievance against Chaplain Taylor, grievance number JCS 14-08-0609-20B.

(Dkt. 129, Ex. 7).   Plaintiff pursued administrative relief through all three steps

against Taylor with Cooper Street denying his grievance for the final time on June

11, 2015, after completing the Step III review.   (Dkt. 63-2, Ex. 9).

## III.   DISCUSSION

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56(a).   "A party

asserting that a fact cannot be or is genuinely disputed must support that assertion

by: (A) citing to particular parts of materials in the record...; or (B) showing that

the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact."

Fed.R.Civ.P. 56(c)(1).   The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

B.     Exhaustion

1.    Legal standard

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."   *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."   *Porter*, 534 U.S. at 532.   In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints."   *Jones*, 549 U.S. at 216.   "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'"   *Jones*, 549 U.S. at 218.   "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."   *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).   "[P]roper exhaustion of administrative remedies is necessary."   *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Brown v. Toombs*, 139 F.3d 1102 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998) (No federal action shall be

brought until such administrative remedies as are available are exhausted).   In

other words, a prisoner may not exhaust administrative remedies during the

pendency of the federal lawsuit.   *Larkins v. Wilkinson*, 1998 WL 898870, at *2

(6th Cir. Dec. 7, 1998).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the

defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an

affirmative defense.   *Id.*   Accordingly, exhaustion is satisfied if plaintiff complied

with the applicable grievance procedures and defendants bear the burden of

showing otherwise.   *See Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir.

2007) (a prisoner-plaintiff "does not bear the burden of specially pleading and

proving exhaustion; rather, this affirmative defense may serve as a basis for

dismissal only if raised and proven by the defendants.").


### 2.    Analysis and conclusion

Martin argues that plaintiff's claim against him was not exhausted because

he was not specifically named in the grievance.   Notably, Magistrate Judge

Hluchaniuk previously rejected this argument:

> It is inconsequential that Martin and Riley were not
> named in the grievance.   Plaintiff provided more than
> adequate notice of the very specific issue he was
> grieving. He was not – and probably could not be –
> aware of every person involved in the decision-making
> process denying his participation in the Eid feasts.

> Under *Jones* and its progeny, this is not pertinent, despite
> the requirement in the grievance procedure that all
> persons being grieved must be identified.

(Dkt. 74, Pg ID 950; *see also* Dkt. 137, Judge Ludington's Order Overruling

Defendants' Objections to Dkt. 74).   As Judge Hluchaniuk explained in that

decision, while the grievance procedure *may* promote early notice to those who

might later be sued, that has not been considered one of the leading purposes of the

exhaustion requirement.   *Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich.

2010) (citing *Jones*, 549 U.S. 199) (citing *Johnson v. Johnson*, 385 F.3d 503, 522

(5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert

prison officials to a problem, not to provide personal notice to a particular official

that he may be sued; the grievance is not a summons and complaint that initiates

adversarial litigation").   Rather, the leading purposes of the exhaustion

requirement have been met where prison officials were alerted to the plaintiff's

complaints, the MDOC addressed all of plaintiff's allegations on their merits, and

the litigation was improved by the preparation of a useful record.   *Id*.   Therefore,

even where a plaintiff may not have specifically named all of the defendants or

described all of the specific claims in the initial grievance, where the grievance

was considered on the merits, a plaintiff has properly exhausted the required

administrative remedies prior to filing this lawsuit.   *Id*.   This is so, despite the

requirement in the grievance procedure that all those involved in the grievance

must be identified, which is not a requirement that courts have rigidly enforced

where an inmate is unaware of an individual's involvement at the time a grievance

is filed.

> While the Grievance Policy instructs prisoners to include
> "the names of all those involved in the issue," prisoners
> may be unable to learn the names of all of the involved
> parties given the very short time line for filing a Step I
> grievance and the prisoner's limited ability to access
> information while incarcerated.   The MDOC cannot
> create a grievance process that effectively makes it
> impossible for prisoners to properly grieve their claims.

*Martin v. MacLaren*, 2015 WL 4928937, at *2 (W.D. Mich. Aug. 13, 2015)

(quoting *Contor v. Caruso*, 2008 WL 878665, at *7 (W.D. Mich. Mar. 28, 2008)).

Here, there is no evidence suggesting that plaintiff was aware of Martin's

involvement before he filed suit in this case or before he learned of his

involvement in discovery.   Requiring plaintiff to have exhausted the same issue a

second time just because an additional decision-maker has been identified does not

seem to serve any legitimate purpose.

Moreover, reconsideration of this issue appears to be unwarranted under the

law of the case doctrine.   Under this doctrine, "when a court decides upon a rule

of law, that decision should continue to govern the same issues in subsequent

stages in the same case."   *Arizona v. California*, 460 U.S. 605, 618 (1983).

"Accordingly, the doctrine 'does not apply if the court is "convinced that [its prior

decision] is clearly erroneous and would work a manifest injustice.""   *Pepper v.*

*United States*, 562 U.S. 476, 506-07 (2011) (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997)).   Application of the doctrine is discretionary, and courts should be reluctant, absent good cause, to revisit prior rulings.   *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997), cert denied 522 U.S. 948 (1997) (citation omitted).   It is appropriate to invoke the doctrine in this matter, given that this issue was already decided by Judge Hluchaniuk and his ruling was adopted by Judge Ludington, over defendants' objections, particularly since Martin has not offered any new evidence or new theory suggesting that plaintiff's exhaustion of administrative remedies was ineffective as to him.[1]

    C.   <u>Qualified Immunity</u>

        1.   Legal standard

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Defendants bear the burden of pleading qualified

---

[1]   Notably, there is a split of authority on whether a magistrate judge, even on consent of the parties, has the authority to reconsider a prior ruling of the district judge in the same case. *Compare Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 564–65 (2d Cir. 1998) and *Taylor v. Nat'l Group of Companies, Inc.*, 765 F. Supp. 411 (N.D. Oh. 1990) with *Copper v. Brookshire*, 70 F.3d 377 (5th Cir. 1995) and *Fieldwork Boston, Inc. v. United States*, 344 F. Supp. 2d 257 (D. Mass. 2004).   The undersigned respectfully declines to do so here.

immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his or her position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. If the first question is resolved in the affirmative, then the court should decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

The Supreme Court later revisited its formulation and discarded the mandatory sequencing of the two-part qualified immunity test, finding that it was no longer sound based on several factors, including judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). While leaving intact the factors that should be considered in such a decision, the Court held that sometimes it makes sense to

decide the second part of the test first, and that such a decision may resolve the controversy without having to address the first part of the test.   *Id.*   In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers.   Bypassing the perhaps more complicated inquiry of whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established.   Specifically, the Court concluded that lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."   *Id.* at 244-45.   "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.'"   *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

Under the "clearly established" prong of the qualified immunity test, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right.   *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   "A clearly established constitutional violation requires on-point, controlling authority or a robust consensus of cases of persuasive authority."   *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435,

22

439 (6th Cir. 2013).   Without on-point authority, only in the most obvious of cases can an official's conduct be held to have been clearly unlawful.   *Sample v. Bailey*, 409 F.3d 689, 698-99 (6th Cir. 2005).

Furthermore, defendants are not required to affirmatively disprove the existence of clearly established law, because "[t]he burden of convincing a court that the law was clearly established rests squarely with the plaintiff."   *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999).   "When a defendant invokes qualified immunity in a motion for summary judgment, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right."   *Folks v. Petit*, 676 Fed. Appx. 567, 569 (6th Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608-09 (6th Cir. 2015)).   Yet, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."   *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (citation omitted).

### 2.   Clearly Established

As the undersigned concluded in the March 3 RR, even though the final judgment in *Dowdy* came after observance of the 2013 Eid, the court had ordered that Muslim inmates, including Nation of Islam inmates, be permitted to observe the Eid <u>more than two months before</u> plaintiff's request to observe the Eid was denied.   (*See Dowdy*, Dkt. 80, p. 6; Dkt. 138).   Significantly, in response to that

order, the MDOC amended Policy Directive 05.03.150 to specifically include

observance of the Eid.   Moreover, the amended Policy Directive became effective

on July 26, 2013, and was disseminated to MDOC personnel on July 30, 2013, the

day before Serafin denied plaintiff's request to observe the Eid.   Furthermore,

Serafin was included on the distribution list for dissemination of the policy, a point

from which it reasonably can be inferred that he in fact received it.   After

Serafin's response, on August 7, 2013, plaintiff spoke with Serafin to attempt to

resolve the matter.   (Dkt. 112, Ex. I, Step I Grievance).   When this conversation

proved unsuccessful, on August 8, 2013, plaintiff filed a Step I Grievance

regarding his participation in the Eid and his inability to freely practice his

religion.   *Id*.   Thus, there were two opportunities after the initial denial on July

31, 2013, for Serafin to correct his application of the new policy *before* the Eid

feast on August 9, 2013.   Yet, he did not do so.

Plaintiff also points out that this Court has already denied Serafin's motion

for summary judgment on the question of qualified immunity, stating that "it was

clearly established law at the time [he] denied plaintiff's request to attend the Eid

feast that such a denial was unconstitutional" and that Serafin "is not entitled to

qualified immunity."   (Dkts. 46 and 51).   Plaintiff argues, as he did previously,

that these ruling should not be disturbed pursuant to the law of the case doctrine.

*Rouse v. Daimler Chrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) ("Under the

law-of-the-case doctrine, findings made at one point in the litigation become the

law of the case for subsequent stages of [the] case.").   Plaintiff is correct.   Even

without such a conclusion, the same result obtains, as the substantive analysis

remains unchanged by the parties' new briefing.

The undersigned previously determined that plaintiff is correct on this point

and Serafin provides no new facts that cause the undersigned to revisit that

conclusion.   (Dkt. 138).   As explained in the March 3 RR, in the Sixth Circuit, a

district court may look to its own decisions in determining whether a right is

clearly established:

> Our review of the Supreme Court's decisions and of our
> own precedent leads us to conclude that, in the ordinary
> instance, to find a clearly established constitutional right,
> *a district court must find binding precedent by the*
> *Supreme Court, its court of appeals* *or itself*.   In an
> extraordinary case, it may be possible for the decisions of
> other courts to clearly establish a principle of law.   For
> the decisions of other courts to provide such "clearly
> established law," these decisions must both point
> unmistakably to the unconstitutionality of the conduct
> complained of and be so clearly foreshadowed by
> applicable direct authority as to leave no doubt in the
> mind of a reasonable officer that his conduct, if
> challenged on constitutional grounds, would be found
> wanting.   Here a mere handful of decisions of other
> circuit and district courts, which are admittedly novel,
> cannot form the basis for a clearly established
> constitutional right in this circuit.

*Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)

25

(emphasis added).[1]    Based on the foregoing, as explained in the March 3 RR, plaintiff had a constitutional right to attend the Eid feast in August 2013 and that right was clearly established at the time of the denial, based on *Dowdy*.

Moreover, defendants' new attempt to apply qualified immunity is not particularly persuasive.    They rely on a recent unpublished Sixth Circuit decision, *Hermansen v. Thompson*, 678 Fed. Appx. 321 (6th Circ. 2017) for the proposition that the mere settlement in *Dowdy* does not clearly establish any constitutional rights.    In *Hermansen*, the Court was presented with a prisoner who was involved in prior litigation (the *Froman* case) regarding the provision of a kosher diet.    He was initially incarcerated as KSR and was one of four plaintiffs who sued over the kosher diet issue.    The matter settled and the court issued an order requiring all parties to abide by the settlement and for the defendants to submit monthly reports regarding compliance, among other things.    *Id*. at *322.    A panel of the Sixth Circuit affirmed the District Court's order closing the case, finding it did not abuse its discretion in concluding that the defendants had complied with the terms of the settlement agreement in good faith.    *Id*.

Hermansen was moved to another facility where the kosher diet settlement

---

[1]    The undersigned is bound by this published Sixth Circuit opinion, which does not appear to have been disturbed by any other published Sixth Circuit precedent.    The undersigned notes, however, that an unpublished decision of the Sixth Circuit appears to call this holding into question.    *Hall v. Sweet*, 2016 WL 7321363, *10 (6th Cir. Dec. 16, 2016).

terms were not followed.   He filed suit to force prison officials at the new facility

to provide a kosher diet in compliance with the settlement agreement in *Froman*.

In *Hermansen*, the defendants were awarded summary judgment based in part on

qualified immunity.   The Sixth Circuit affirmed, finding no support for the notion

that it should have been obvious to defendants that the provision of a kosher diet,

prepared in a separate kitchen facility, nonetheless violated his First Amendment

rights because the same utensils were used on otherwise approved meat products

and otherwise approved dairy products, without first having been kashered and

certified by a rabbi.   *Id*. at *326.   The Court concluded that, even if personnel at

the new facility were aware of the terms of the settlement agreement and the

guidelines implemented by the first facility, "the fact remains that no court had, in

authoritative precedent, interpreted the First Amendment as requiring strict

compliance with the guidelines, whether at KSR or elsewhere."   *Id.*   The Court

went on to hold that even though the *Froman* agreement was enforced by district

court order, "it never ripened into a precedential ruling on the merits of the free

exercise claim."   *Id*.   Thus, the *Froman* agreement did not become precedent

defining the "clearly established law."   *Id*.

    *Dowdy* is distinguishable from the *Froman* decision, rendering *Hermansen*

inapplicable.   On May 24, 2013, Judge Cohn adopted, in part, the Magistrate

Judge's Report and Recommendation and entered judgment in the plaintiffs' favor

on all of their claims relating to participation in the Eid.   (*Dowdy*, Dkt. 80 p. 6).

Thus, there was, in fact, a precedential decision that was not merely an

enforcement of a settlement agreement.   *Id*.   The scope of the decision applied to

the entire class, not just the named plaintiffs.   (Dkt. 85, Case No. 06-11765,

Judgment entered by J. Cohn on 8/13/13).   Furthermore, the *Dowdy* defendants

argued that the Eid claims were mooted by the MDOC's new policy, but the Court

rejected that argument and determined that a ruling was necessary, ultimately

ruling that plaintiffs were entitled to judgment on this issue.   *After* this opinion

and judgment were issued on the Eid claims, the parties submitted a proposed

settlement on other issues, which was approved by the Court after resolving some

objections.   (Case No. 06-11765, Dkt. 86; Dkt. 129).   Thus, the settlement in

*Dowdy* did not relate to the Eid issues, which were decided on the merits by the

Court.   *Hermansen* is, therefore, inapposite.

> 3.     Plaintiff's claims against Martin for the 2013
> denial to participate in Eid fail based on a lack of personal
> involvement.

Martin was not a decision-maker regarding the 2013 denial of plaintiff's

request to participate in Eid.   While Serafin relied on an email from Martin sent

one year before plaintiff's 2013 request, there is nothing in the record to support

the suggestion that Martin was directly involved in denying the 2013 request.

Rather, according to Serafin's deposition, he did not actually contact Martin after

receiving plaintiff's 2013 request; he only referred back to the 2012 email and stated that, to his knowledge, nothing had changed so he relied on that email as to who could attend.    (Dkt. 112-7, Pg ID 1302, dep. pp. 16-17).    And, in order to preclude application of qualified immunity, Martin must have had some personal involvement in the decision after the *Dowdy-El* decision was issued by Judge Cohn, otherwise, his conduct occurred before plaintiff's right was clearly established.    *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (Liability under the federal civil rights laws must be premised on an individual's personal involvement in the violation of a plaintiff's constitutional rights. ) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976)).    Consequently, Martin is entitled to qualified immunity as to the 2013 request.

> 4.    Equal Protection (Serafin only)

Because the claims against Serafin and Taylor withstand the "clearly established" prong of the qualified immunity analysis, the Court must address whether there are material questions of fact on substantive constitutional claims asserted by plaintiff against them.    As set forth above, plaintiff concedes that Taylor is entitled to summary judgment on the Equal Protection/Fourteenth Amendment claims.    Further, the undersigned finds no basis to revisit the conclusions in the March 3 RR, which recommended granting summary judgment in favor of plaintiff and against Serafin on plaintiff's Equal Protection claim.    But,

those issues will nevertheless be discussed here for the sake of completeness.

The Equal Protection Clause of the Fourteenth Amendment "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006). In order to prevail in his claim for violation of the Equal Protection Clause, plaintiff must show that he was similarly situated in all material respects to others whose treatment he desires, coupled with a discriminatory purpose on the part of the accused state actor(s). *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265-266 (1977); *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx 826, 836 (6th Cir. 2009). As plaintiff has noted, an intent to discriminate under the Equal Protection clause is merely the intent to treat differently. *Colorado Christian Univ. v. Weaver*, 534 F.3d 1245 (10th Cir. 2008). Further, taking into account the totality of the relevant facts, where the law "bears more heavily" on members of one protected class than on another, an "invidious discriminatory purpose" may be inferred. *Washington v. Davis*, 426 U.S. 229, 242 (1976).

Based on the undisputed facts here, defendant Serafin made a conscious decision to treat religious adherents of Al-Islam differently from plaintiff and other adherents of the Nation of Islam. Going further, Serafin even suggested to plaintiff that if he wanted to receive the same treatment that Al-Islam members

received, he should change his religious sect to Al-Islam.   As such, an invidious

discriminatory purpose may be inferred.   As discussed more fully below, the

evidence also establishes that plaintiff is similarly situated in all material respects

to Al-Islam inmates who were allowed to attend the Eid.   Serafin's primary

argument concerning Equal Protection is that the court should dismiss the claim

because, assuming the inapplicability of qualified immunity as to defendant

Serafin, plaintiff's cause sounds solely under the First Amendment.   Having failed

to substantively dispute the facts set forth by plaintiff supporting:   (1) the

implication of plaintiff's fundamental right to practice religion; (2) discriminatory

treatment and a discriminatory purpose by Serafin[1]; and (3) plaintiff being

similarly situated to Al-Islam observants who were permitted to attend the Eid,

defendant's argument fails.

> 5.    Substantive Due Process (Serafin only)

Again, the undersigned finds no basis to revisit the conclusions in the March

3 RR, which recommended denying summary judgment in favor of plaintiff on the

substantive due process claim.   Plaintiff has persuasively asserted that there exists

a protected liberty interest in practicing one's religion.   *See Ramsey v. Goord*, 661

---

[1] Serafin makes no effort to argue that avoidance of mixed religious call-outs was reasonably related to a valid penological interest, and assuming it is, that exclusion of members of NOI and MSTA was the least restrictive manner in which to serve that or any articulated interest. Moreover, the timing of the Martin email, which well pre-dates the *Dowdy* Order in which Judge Cohn determined that the practice violated the First and Fourteenth Amendments renders reliance on the Martin memo unreasonable.

F.Supp.2d 370 (W.D.N.Y. 2009) ("Among the 'most basic liberty interests'

retained by prison inmates is the First Amendment to freely exercises religion.");

*Chambers v. Eppolito*, 2007 WL 1892093, at *12 (D.N.H. 2007) ("Because the

First Amendment gives rise to a liberty interest in practicing one's religion, before

the State can burden the practice of his faith, [plaintiff] is entitled to due

process."); *see also Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) ("While this

court has not attempted to define with exactness the liberty interest thus

guaranteed, the term has received much consideration and some of the including

things have been definitely stated.   Without doubt, it denotes not merely freedom

from bodily restraint but also the right . . . to worship God according to the dictates

of his own conscience[.]").

Notwithstanding the acknowledgment of the liberty interest attached to

plaintiff's right to worship, the undersigned previously concluded that plaintiff is

not entitled to summary judgment on his Substantive Due Process claim under the

Fourteenth Amendment.   Defendant Serafin correctly points out that the First

Amendment is the proper source for relief for plaintiff here.   The Supreme Court

has held that when there is an explicit source for a constitutional protection, then a

plaintiff's claim should be analyzed under that Amendment.   *Albright v. Oliver*,

510 U.S. 266, 273 (1994); *Graham v. Connor,* 490 U.S. 386, 395 (1989).   In

*Albright*, the Court quoted its language from *Graham* where it declared:

> "[W]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, *not the more generalized notion of substantive due process*, must be the guide for analyzing these claims."

*Id.* (emphasis supplied).

Defendant's citation to *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) is also apt.   In *Walker*, the plaintiff sought relief under the Substantive Due Process Clause of the Fourteenth Amendment for the defendants' actions that allegedly led to the death of a prisoner.   However, applying the reasoning from *Graham*, the Sixth Circuit concluded that the source of plaintiff's claim was the Eighth Amendment, which specifically addresses the "unnecessary and wanton infliction of pain in penal institutions."   *Id.* (quoting *Whitley v. Albers,* 475 U.S. 312, 326 (1986).   As such, plaintiff's claims required analysis solely under that Amendment.   Similarly, in the instant case, plaintiff's right to the free exercise of his religion and freedom from the state's establishment of religion have an explicit source in the First Amendment, discussed *infra*; and his right to be free from discriminatory treatment based on his religion finds an explicit source in the Equal Protection Clause of the Fourteenth Amendment.   Thus, his remedy(ies) for any alleged violation of those rights reside(s) in those Amendments.   Therefore, the undersigned stands by the recommendation in the March 3 RR that plaintiff's Substantive Due Process claim should be dismissed.

Notably, defendant makes a blanket assertion of the *Graham* limitation for all of plaintiff's Fourteenth Amendment claims, presumably in an effort to also foreclose plaintiff's Equal Protection claim.   However, the rationale for *Graham* applies specifically in the context of a plaintiff's invocation of the Substantive Due Process Clause.   Indeed, the Court there noted that the limitation stems from instances where a defendant's liberty interest finds no explicit source of protection in any of the Constitutional Amendments.   The Equal Protection Clause of the Fourteenth Amendment however, as discussed above, provides an explicit—and distinct—source of protection for those individuals subjected to discriminatory action by the State in relation to the exercise of a fundamental right or against a protected class.   Consequently, plaintiff's cause under the Equal Protection Clause is not dependent on invocation of the Substantive Due Process Clause and, thus, does not appear to be subject to the *Graham* limitation.

### 6.    Free Exercise Clause (Serafin and Taylor)

The undersigned finds no basis to revisit the conclusions in the March 3 RR, which recommended granting summary judgment in favor of plaintiff and against Serafin on plaintiff's First Amendment claims.   But, those issues will be discussed here for the sake of completeness.   The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]."   U.S. Const. Amend. I.

The First Amendment is applicable to the States through the Fourteenth Amendment.   *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).   Defendant Serafin has failed to come forward with any evidence suggesting that the practice of disallowing Nation of Islam inmates from attending the Eid is reasonably related to a legitimate penological interest, as required under *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78,89 (1987)). Under *Turner*, the following four factors are relevant in determining the reasonableness of the regulation at issue:

> (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;"

> (2) whether there are "alternative means of exercising the right that remain open to prison inmates;"

> (3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and

> (4) the availability of a "ready alternative…that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests."

*Id.* at 89-91.   However, a "trial court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors."   *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999).

Here, to the extent that there is any substantive discussion concerning a

rationale for the practice, it is the concern of "mixed religious call-outs" which defendant Serafin mentioned during his deposition.   Yet, plaintiff ably demonstrates both the minimal nature of the concern as well as the availability of, and indeed routine use of measures to address the concern within the facility. Specifically, plaintiff points out, from defendant Serafin's own testimony, that mixed religious call-outs relating to various sects of Christians are routinely accommodated at the facility.   For instance, the various Christian sects that all celebrate Christmas on December 25th each year, including Mormons, Orthodox Christians, Protestants, Roman Catholics and Seventh Day Adventists, were simply slotted different times of day for their respective celebrations.   The same procedure was utilized for participation in the Eid feast for various members of Al-Islam who were assigned different security designations: those of the same level were permitted to celebrate together during the time slot assigned to their respective levels.   Thus, to the extent that there may have been any legitimate penological interest in avoiding mixed religious call-outs, defendant Serafin's testimony makes clear that alternative procedures could be employed at *de minimis* expense to the prison to satisfy that interest.

Plaintiff also adequately establishes that he is similarly situated in all material respects to members of Al-Islam who were permitted to participate in the Eid feast, noting their mutual observance of the central tenants of Islam as well as

36

his Level I inmate status.   Defendant Serafin on the other hand, makes no effort to address any of the factors set forth in *Turner*, to determine whether there has been a Free Exercise violation.   As such, the undersigned stands by the earlier recommendation that plaintiff is entitled to summary judgment on this claim.

Just as in as in March 3 RR, the undersigned does not find persuasive defendants' argument that they are entitled to qualified immunity because plaintiff merely missed a single religious service.   While defendants assert that missing a single religious service is not a constitutional violation, plaintiff maintains that this ignores applicable law holding that precluding an inmate from observing a central tenet of his faith is unconstitutional.   *See Whitney v. Brown*, 882 F.2d 1068, 1074 (6th Cir. 1989) (under *Turner*, a policy precluding Jewish inmates from observing Sabbath or Passover was unconstitutional in view of their religious significance). Plaintiff points out that even the MDOC describes the Eid as a "religiously required ... obligatory festival."   (Dkt. 112, Ex. B; *Dowdy*, Dkt. 80 p. 6).   Thus, it is inaccurate to characterize not participating in it as merely missing one religious service. The March 3 RR concluded that defendants' reliance on *Colvin v. Caruso*, a case involving appreciably different facts regarding the provision of kosher meals and an apparent mistake by the defendant, was not persuasive here, where defendants have not made the requisite showing for lack of intent:

> ... Colvin has not pointed to any evidence showing that
> Chaplain Riley acted unreasonably or that he

"knowingly" violated Colvin's rights. *See Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (holding that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" (citation omitted)).   Rather, Riley, consistent with his job function, received Colvin's request for kosher meals, checked Colvin's eligibility, and was informed that Colvin was a Muslim and therefore not qualified for the program.   Riley, at worst, committed a "reasonable mistake" as to Colvin's status, a mistake that does not disqualify him from receiving qualified immunity.   *See Dorsey*, 517 F.3d at 394 ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the [conduct of a government official]." (citation omitted)).   Furthermore, once the mistake was discovered, LMF officials, including Riley, worked "as quickly as possible" to ensure that Colvin received kosher meals.

*Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010).   Here, Serafin does not make the case for innocent mistake.   Thus, he is not entitled to qualified immunity on this basis either.   Consequently, not only should Serafin's motion here be denied, the undersigned re-affirms the conclusions in the March 3 RR that summary judgment be granted in plaintiff's favor and against Serafin.

As to plaintiff's claim against Taylor, as set forth above, the right to participate in Eid was clearly established as of the time plaintiff asserts he made the request to participate in the 2014 Eid and it is undisputed that plaintiff did not participate in the 2014 Eid.   Yet, Taylor argues that plaintiff's claim fails because "it was not clearly established in 2014 that Muslim prisoners were entitled to a feast to celebrate the end of Ramadan."   In the view of the undersigned, plaintiff

has abandoned his claim regarding the lack of a "feast," given that given that

plaintiff conceded the feast-related claims against Barrett and Riley.   Indeed,

plaintiff even asserts that Taylor's feast argument mischaracterizes the nature of

this suit and his claims because Taylor ignores the fact that he was prevented from

observing the 2014 Eid entirely.   While every other NOI inmate who wanted to

observe Eid in 2014 was permitted to do so, plaintiff did not receive a work call-

out, even though he requested a callout from Taylor and his work supervisor.

(Maye Tr. at 42:12-30).   Plaintiff further argues that his claims stem from the fact

that for the second year in a row, despite the *Dowdy* order and the MDOC Policy

Directive to the contrary, he was prohibited from observing Eid.   Accordingly,

plaintiff's claim against Taylor does not rest on the lack of a "feast" and Taylor's

arguments in this regard do not change the recommended result.

Plaintiff also disputes Taylor's assertion that he did not present any evidence

that he requested a call-out for the 2014 Eid.   Plaintiff testified that he asked for a

call-out during his July 23, 2014 meeting with Chaplain Taylor.   *Id*.   And, despite

Taylor's assurances to the contrary, plaintiff did not get a call-out from his work

detail.   In fact, every other NOI inmate was to be permitted to observe Eid but

plaintiff did not receive a call-out.   (Dkt. 148, Ex B, Riley Tr. at 42:10-12).   And,

while Taylor wants to characterize his failure to issue this call-out as a mistake,

according to plaintiff, a "mistake" that causes an inmate to miss a religious

celebration of paramount importance cannot be overlooked.   Further, in light of
the *Dowdy* order, the changes to the MDOC Policy Directive, and the efforts on the
part of the MDOC staff to educate and train their employees, plaintiff says that
such a "mistake" is even more glaring.   *Id.* at 35:12-23.   This is particularly true
given that, on realizing he was not properly placed on the callout list, plaintiff
again raised the issue, but was still denied the right to observe Eid even after
giving officials the opportunity to rectify the wrong.   Thus, plaintiff maintains that
like Serafin, Taylor does not make colorable case for an innocent mistake; and
ignores the directly applicable precedent as well as MDOC policy holding that
precluding an inmate from observing a central tenet of his faith is unconstitutional.
According to plaintiff, Taylor cannot claim, in light of the MDOC's own
pronouncements, that missing Eid is akin to missing a single religious service of
relative less importance and thus, is not a constitutional violation.   This, at the
very least, creates an issue of material fact with regard to plaintiff's 2014 First
Amendment claims.

In the view of the undersigned, Taylor is not claiming innocent mistake.
Rather, he is claiming that he never received any request from plaintiff to
participate in the 2014 Eid.   Plaintiff claims that he did submit such a request.
They have each provided competing deposition testimony in support of their
respective positions.   This presents a classic question of material fact that must be

resolved by a jury, given the conclusion above that the right to participate in the Eid was clearly established before plaintiff's alleged 2014 request and alleged denial by Taylor.

    7.    Establishment Clause (Serafin and Taylor)

The undersigned finds no basis to revisit the conclusions in the March 3 RR, which recommended granting summary judgment in favor of plaintiff and against Serafin on plaintiff's Establishment Clause claim.   But, those issues will be discuss here for the sake of completeness.

The First Amendment of the United States Constitution proscribes the enactment of any law "respecting an establishment of religion."   U.S. CONST. amend. I.   The Supreme Court has established that, "[T]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."   *Larson v. Valente*, 456 U.S. 228, 244 (1982). Moreover, the protection of the First Amendment extends to lesser known and/or less well established sects within a given religion.   *See Wilson v. Nat'l Labor Relations Bd.*, 920 F.2d 1282, 1285-87 (6th Cir. 1990) (state statute found to have violated the Establishment Clause because it accommodated the "established and traditional tenets" of "bona fide" religions but not the beliefs of individuals associated with unestablished sects).

In the context of prison inmates, a prisoner who follows a minority religion

must be afforded "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972).   Indeed, failure of the state to afford such an opportunity evidences "palpable discrimination." *Id.*   Once a prisoner establishes the existence of purposeful discrimination based on religion, the same analytical framework applied above to plaintiff's Free Exercise claim, namely – *Turner v. Safley's* inquiry of whether the prison's regulation is reasonably related to a legitimate penological interest, applies to plaintiff's Establishment Clause claim.   *California First Amendment Coalition v. Woodford*, 299 F.3d 868, 878 (9th Cir. 2002) ("[I]n reviewing a challenge to a prison regulation that 'burdens fundamental rights,' we are directed to ask whether the regulation is 'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns.") (quoting *Turner v. Safley*); *see also Harris v. McRae*, 448 U.S. 297, 323 n. 26 (1980) (where claimed constitutional violation relied on disparate treatment between groups, plaintiffs were required to show that the facially neutral statute purposely discriminated against members of protected class); *Cf. Scott v. Pierce*, 2012 WL 12535442, *3 (S.D. Tex. 2012) (District Court applied strict scrutiny to prisoner's Establishment Clause claim, rather than more lenient *Turner v. Safley* standard), and *Glenn v. New Hampshire State Prison Family Connection Center*, 2012 WL 2413934, *4

(D. N.H. 2012) (same).[2]

Here, the policy at issue is Serafin's denial of the right to participate in the Eid feast to members of the Nation of Islam.   *See Am. Humanist Ass'n v. United States*, 63 F.Supp.3d 1274, 1282 (D. Or. 2014) ("For the purpose of an Establishment Clause violation, 'a government policy need not be formal, written, or approved by an official body to qualify as state sponsorship of religion.'") (quoting *Canell v. Lightner*, 143 F.3d 1210, 1214 (9th Cir. 1998)).   As discussed, defendant Serafin has not come forward with any evidence to suggest that there is a genuine issue of fact relating to the existence of a legitimate penological interest. Moreover, it remains undisputed that Serafin expressly denied plaintiff the opportunity to participate in the Eid because of his status as a member of the Nation of Islam, while at the same time permitting members of the majority sect, Al-Islam to participate.   Defendant Serafin's further actions in (1) suggesting that plaintiff change his affiliation to Al-Islam in order to receive permission to participate, and (2) failing to adhere to the prison's own revised policy requiring that Nation of Islam members be permitted to participate in the Eid, underscore the disparity in treatment, amplify the wholesale nature of the deprivation, and readily support a finding of purposeful discrimination.

---

[2]   Here, the undersigned has concluded that the policy applied to members of the Nation of Islam fails to meet the *Turner v. Safley* test and thus, it would also fail to satisfy the higher standard of strict scrutiny.

As to the Establishment Clause claim against Taylor, as set forth above, he claims that he never received any request from plaintiff to participate in the 2014 Eid and plaintiff claims that he did submit such a request.   However, plaintiff has not come forward with any evidence suggesting that Taylor's actions were based on a policy preferring one religion over another.   Indeed, plaintiff presents evidence that all other NOI members who submitted requests were in fact permitted to participate in the 2014 Eid celebration.   Consequently, in the view of the undersigned, plaintiff has not presented any evidence which creates a material issue of fact and summary judgment in Taylor's favor on the Establishment Clause claim is appropriate.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS**:

1.   that defendant Serafin's motion for summary judgment be **DENIED** in part and **GRANTED** in part (as to plaintiff's substantive due process claim only) and that plaintiff's motion for partial summary judgment be **GRANTED** in part as set forth in the March 3, 2017 Report and Recommendation;

2.   that defendant Taylor's motion for summary judgment be **GRANTED** in all respects except as to the Free Exercise claim, which should be **DENIED**;

3.   that defendant Martin's motion for summary judgment should be **GRANTED** in its entirety; and

4. that defendants Riley and Barrett's motion for summary judgment should be **GRANTED** in its entirety, pursuant to the parties' agreement.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections

are without merit, it may rule without awaiting the response.

Date: January 24, 2018                s/Stephanie Dawkins Davis
                                      Stephanie Dawkins Davis
                                      United States Magistrate Judge

### **CERTIFICATE OF SERVICE**

I certify that on January 24, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Durene Worth
Acting in the absence of
Tammy Hallwood, Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov